IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

02 FEB 13 PM 3:22

U.S. [...]
N.D. OF ALABAMA

ENTERED
FEB 13 2002

ORIX FINANCIAL SERVICES, )
)
    Plaintiff, )
)
)
v. )
) CIVIL ACTION NO.
OLD SOUTH UTILITY )
CONSTRUCTION, INC. et al., ) 00-AR-3241-S
)
    Defendants. )
)

**MEMORANDUM OPINION**

Before this court is the motion for summary judgment of plaintiff, Orix Financial Services, Inc. f/k/a Orix Credit Alliance, Inc. ("Orix"), against defendants, Old South Utility Construction, Inc. ("Old South"), Joel P. Sutton ("Sutton"), and Bank of Alabama ("Bank"). Besides a need to fix the amount owed, the dispute involves conflicting claims of priority between Orix and Bank as to the security interests in the collateral that secured loans made to Old South by Orix and Bank.

**Undisputed Facts**

By March 3, 1999, Orix held eight loans that had financed the purchase of heavy equipment by Old South. On March 4, 1999, Orix, in response to Bank's request, sent a letter to Bank listing the payoff amounts necessary to satisfy all eight of Old South's said obligations. Two days later, Bank wired to Orix the

funds necessary to satisfy these obligations as part of a loan the Bank was making Old South to refinance all of Old South's then existing debt.  Bank closed this loan on March 10.  On March 9, the day before the loan closed, Old South bought items known as a "Crawler Dozer" and a "Backhoe/Loader" from Warrior Tractor and Equipment Company, Inc., ("Warrior").  On March 15, Orix filed a UCC financing statement that, consistent with the sales contract, covered these two newly bought pieces of equipment, and all other Old South property.  Orix refers to this as the "blanket collateral" security interest.  On April 1, Old South purchased an "Excavator" from Warrior, which it financed through Orix.  On April 9, Orix recorded a UCC statement covering the Excavator and again recorded its blanket collateral security interest.  On April 16 Old South purchased something called a "Peterbuilt" from Warrior.  Warrior assigned the debt contracts relating to both of these purchases to Orix as additional collateral to secure Orix's loan to Old South.  On May 4, 1999, Old South bought a "Trailer" from Warrior, and that debt was also assigned to Orix.  On May 24, Bank filed its financing statement for the March 10 loan.

   Old South defaulted on its obligations to Bank and to Orix, whereupon Bank and/or Orix repossessed all of Old South's property.  For this repossession, and subsequent evaluations of the collateral, Bank employed David Farmer, ("Farmer"), of

2

Heritage Realty and Auctions. Orix repossessed the five above-named pieces of equipment, sold them, and applied the proceeds to Old South's debt. Orix now seeks to satisfy the balance of Old South's debt to it out of Old South's remaining assets, all of which is either in the possession of Bank or has been sold by Bank.

The problem faced by the court arises from the fact that Bank not only repossessed all of these remaining assets but has sold some of them. In this action, Orix seeks to recover directly from Bank the balance of Old South's indebtedness to Orix, first out of the proceeds of the sales made by Bank, and then out of either unsold equipment in Bank's possession or by money judgment jointly against Bank, Old South, the primary debtor, and Sutton, who personally guaranteed Old South's debt to Orix. The sum of the proceeds of the sales of disputed property and the fair market value of the collateral held by Bank exceeds the amount claimed by Orix. In other words, if and when the remaining property is sold, there will not only be enough money to pay Orix what Old South owes it, but also there will be something left over for Bank.

Although Sutton, who along with his wife owns Old South, personally guaranteed Old South's debt to Orix, neither he nor Old South has been heard from by the court since their attorney successfully obtained leave to withdraw from representing them in

3

this case, and they are presumed to be insolvent. They have not resisted Orix's motion for summary judgment.

## Analysis

The central question before the court is who has the superior interest in the disputed property repossessed and sold by Bank or now in Bank's possession. Under Alabama law, which governs this action, he who is first to file a financing statement has the superior interest. Ala Code § 7-9-312(1975). Orix filed first. By the plain language of the statute Orix has the superior interest. Bank seeks to leapfrog Orix's superior position by interposing the equitable defenses of "equitable subrogation" and/or "equitable subordination." In order to prevail on its motion for summary judgment, Orix must show that no reasonable finder of fact could find that either of these defenses is meritorious.

Orix maintains that the Alabama version of the UCC governs disputes over the primacy of secured parties. The Supreme Court of Alabama has declared that "the priority of secured parties is governed **entirely** by Article 9 of the UCC." *Wadsworth v. Yancy Brothers Co.*, 423 So. 2d 1343, 1346 (Ala. 1982)(emphasis added). This argument is strengthened by the enactment of Alabama Code § 7-9-504(5),[1] which deals with the subrogation rights of a chattel

---

[1] This section has been repealed, effective January 1, 2002. Nevertheless, it is effective as the law governing this dispute and also for the statutory construction purpose for which it is

4

paper debtor. The very existence of this statute suggests that the legislature believed that when subrogation is arguably appropriate in UCC governed cases, a statute must create the subrogation right. It cannot be implied. While there is no Alabama case that directly holds that equitable subrogation is not available in UCC Article 9 lien priority disputes, this court concludes that if and when presented with the issue, the Alabama Supreme Court would rule that equitable subrogation is not available. Therefore, Bank's equitable subrogation defense fails as a matter of law.

Bank's second defense is equitable subordination.

> Proper exercise of the equitable subordination power can take place only where three elements are established: (1) The claimant must have engaged in some type of inequitable conduct, (2) The misconduct must have resulted in injury to the creditors or conferred an unfair advantage on the claimant, (3) Subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act. The inequitable conduct need not be related to the acquisition or assertion of the claim. The claim can be subordinated only to the extent necessary to offset the harm suffered by the bankrupt and its creditors on account of that conduct.

*In re Lemco Gypsum, Inc.*, 911 F. 2d 1553, 1556 (11th. Cir. 1990)(internal citations omitted). Bank has met the second and third elements listed in *Lemco*. The claim of equitable subordination, then, stands or falls on whether Orix's conduct

---

cited.

was inequitable. For purposes of the summary judgment motion now under consideration, this court must determine whether a reasonable finder of fact could conclude that Orix's conduct was inequitable. Viewing all the evidence in a light most favorable to Bank, the court concludes that a reasonable finder of fact could find Orix's failure to notify Bank of its March 9 sale to Old South to be inequitable. Nevertheless, if a finder of fact so found, Orix could still rely on the April 9 filings supporting the April 1 sale. Orix filed its statement a month after Bank had closed its loan, and at that point Bank still had not filed. No reasonable finder of fact could find that making these sales was in any way inequitable. Because the Orix filings effected after Bank closed its loan but before Bank filed are adequate to secure all of the disputed collateral, Orix is entitled to summary judgment against Bank as well as the other two defendants.

### Remedy

Orix seeks attorney's fees of 20%, as provided in the loan documents, and contractual interest of 24 1/3 % per year. As the next creditor in line and one who may not be able to recover all of its indebtedness from an insolvent Old South, Bank has a motivation to try to reduce what Old South owes to Orix, thereby increasing the assets which will remain for Bank to apply to its

loan to Old South.  To that end Bank points out that it was never a party to the contract between Orix and Old South and therefore should not be bound by it with respect to interest and attorney's fees.  This is true as far as it goes, but does not excuse Bank from its obligation to return to Orix property that it holds and that was or is owned by Old South and upon which Orix held or holds a superior lien.  Bank does not have to "pay" anything to Orix, whether it be interest, attorney's fees or even principal.  Old South is the obligor.  Old South and its guarantor must meet this obligation, if not out of their pockets, out of property that Old South owns, or owned, but is now held by Bank or has been liquidated by Bank.  It was Old South that contracted with Orix to pay attorney fees and interest of 24 1/3% a year.  It is therefore Old South that is liable for these items.  Bank has no more standing to complain about what it regards as excessively high interest or attorney's fee provisions than it does to complain that Old South paid too much for a crawler/dozer or that it should have purchased a Caterpillar brand tractor instead of a John Deere.  Bank cannot complain about the terms of the contracts between Old South and Orix.  After all, as it points out, it was not a party.

   Though Bank is not bound by the contracts between Old South and Orix, its position is adverse to Orix in a way that explains why these two parties have briefed the issues of attorney's fees

and interest. As pointed out, neither Old South nor Sutton has opposed Orix's summary judgment motion. If this leaves Bank holding the bag (or the collateral?), that is not the fault of Orix.

The attorney's fee provision contained in the contracts between Orix and Old South allows Orix to recover from Old South reasonable attorneys fees (defined as twenty percent of the outstanding balance), incurred by Orix in recovering from Old South what it is owed by Old South. Bank points out that the contract covers only fees incurred in collection, and argues that this means that Orix can only recover fees expended in collecting from Old South, not in recovering property from Bank. This court agrees in theory but disagrees in practical effect. The fees Orix is entitled to are those it incurred recovering property from Old South and collecting from Old South. But, once Bank took what rightfully belonged to Orix, effectively destroying Orix's final lien, and Orix necessarily proceeded against Bank, it was no longer recovering from Old South, but was seeking what had been converted by Bank.

As a practical matter, the determination that only some of the fees incurred by Orix are recoverable from Old South is of no moment if the lawyer's fee is twenty percent of the outstanding balance. This determination is important only if Bank succeeds in its attempt to defeat the attorney's fee clause.

As the contract itself reveals, the attorney's fee provision represents not a penalty, but rather liquidated damages. Under New York law, which governs the contract, a court considering whether to uphold an attorney's fee liquidated damages provision

> should determine whether the amount stipulated was unreasonably large or grossly disproportionate to the damages which the plaintiff was likely to suffer from breach in the event it did not rely on [defendant's] agreement to pay it's attorney's fees. If the amount is found to be unreasonably large, then the provision is void as a penalty.

*Equitable Lumber Corp. v. IPA Land Development*, 38 N.Y. 2d 516, 524 (N.Y. 1976)(considering a 30% attorney fee provision). This court does not have any evidence upon which to find that a 20% attorney's fee provision, either in New York or Alabama, is not reasonable. If Bank had wanted to dispute the reasonableness of a 20% fee on a collection item, whether or not called "liquidated damages," it should have offered some evidence to show what a reasonable fee is. From this court's experience, 20% for a collection item constitutes a reasonable fee. The judgment entered against Bank, Sutton, and Old South will therefore include an attorney's fee of 20% of $159,995.35, or $31,999.07. This court is using as the sum collected by Orix's counsel as the amount of the outstanding principal after the sale of repossessed equipment, because there is no evidence that

9

Orix used lawyers in the conduct or preparation of that sale.

Bank also contests the 23 1/4 % interest sought by Orix. Bank's main argument is that, like the attorney fee provision, it is not bound by the contract between Orix and Old South. Like the attorney's fees owed to Orix by Old South, Bank is not bound by the contract to pay the interest, but Old South is. And, like the attorney's fees, Orix can recover against Old South from property that Bank repossessed from Old South.

Bank also argues that because ambiguities in a contract are construed against the draftsman, in this case Orix, the interest is due to be reduced or eliminated. This argument falters on the ambiguity point. Bank's conclusory assertion aside, there is no ambiguity in the contracts. They read, "[l]ate charges shall be calculated at one-fifteenth (1/15) of 1% per day but not to exceed any maximum permitted by applicable law." There is no ambiguity, and this argument fails.

Because the contract does not so provide, this court will not compound the interest, but rather calculates the interest with the appropriate rate and adds the principal and interest at the end of the calculations. Old South defaulted on May 16, 2000 with a then balance due of

10

$310,551.55. For the 233 days between May 16, 2000 and the sale on January 5, 2001, interest ran at 24 1/3% (calculated using the actual contractual term of 1/15 of one per cent per day) on the full $310,551.55 and equals $48,239.01. On January 5 and 8, 2001, Orix sold the five pieces of equipment that Orix repossessed from Old South and netted $150,556.20, reducing the principal to $159,995.35. For the 404 days from January 5, 2001 until February 13, 2002, interest accumulated at the rate of 24 1/3% on the balance of $159,955.35 and equaled $43,081.31. Therefore, as of February 13, 2002, the accumulated interest totals $91,320.32, which, when added to the principal of $159,995.35, totals $251,315.67. This sum, added to the $31,999.07 in attorney's fees, brings Old South's total indebtedness to Orix to $283,314.74.

Bank has already liquidated some of the collateral, for which it has received $264,410.00. The lowest estimate ever made by Farmer of the value of the unsold collateral was $139,000.00. Because the sum of the value of the liquidated and unliquidated collateral is at least $403,410.00, Bank has in its possession more than enough Old South property, or funds obtained by liquidating Old South Property, to cover Old South's indebtedness to Orix. In order to avoid the more cumbersome process of ordering the Bank to transfer

11

equipment to Orix, this court will instead, by separate order, order Bank to pay Orix the full amount of Old South's indebtedness of $283,314.74 in full satisfaction of any claim Orix may have against Old South, Sutton and Bank, arising out of these transactions.

This court did not rely on the disputed affidavit of Bill Bagby to reach this decision and will, by separate order, moot the motion to strike said affidavit.

In accordance with the reasons stated above, this court finds that there are no triable issues of material fact and will enter summary judgment in favor of Orix in the amount of $283,314.74.

DONE this 13th day of February, 2002.

```
                                    _____
                                    WILLIAM M. ACKER, JR.
                                    UNITED STATES DISTRICT JUDGE
```